1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

13 | KATHLEEN SPENCER; JASON
VIGLIANCO; and MANDY RODRIGUEZ,
14 | Washington residents, on behalf of themselves
and all others similarly situated,

15

Plaintiffs,

16 | v.

17 | PROVIDENCE ST. JOSEPH HEALTH, a
Washington non-profit corporation; and
18 | WESTERN HEALTHCONNECT, a
Washington non-profit corporation
19

Defendants.

20

**Case No. 22-1033**

**COMPLAINT—CLASS ACTION**

21        Kathleen Spencer, Jason Viglianco, and Mandy Rodriguez ("Named Plaintiffs") on

22 behalf of themselves and all other persons similarly situated, bring this putative class action suit

23 against Defendants Providence St. Joseph Health ("PSJH") and Western HealthConnect

24 (collectively "Defendants" or "Providence"), which own, operate, or manage multiple healthcare

25 facilities in Western Washington where Named Plaintiffs and other d/Deaf patients have been

26 denied effective communication in violation of federal anti-discrimination laws.

COMPLAINT - 1; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

**INTRODUCTION**

1.      Effective communication in a healthcare facility is of paramount importance to ensure that doctors, nurses, and other medical professionals can fully understand the information patients are trying to express about their health condition; that patients can fully understand the information and advice that such medical professionals are trying to provide; and that fully informed decisions can be made about care for medical conditions. Lack of prompt and effective communication access can result in a host of harms, ranging from inadequate healthcare treatment to injury or death.

2.      Despite its importance, Defendants have consistently failed to provide Named Plaintiffs and other d/Deaf[1] patients with the effective communication necessary to ensure full and equal access to the benefits of Defendants' healthcare services. Named Plaintiffs bring this lawsuit to remedy Defendants' unlawful discrimination against d/Deaf patients who seek healthcare services at Defendants' numerous healthcare facilities in Western Washington, including facilities directly operated by Defendants' subsidiaries, Providence Health & Services, Providence Health & Services – Washington, Swedish, Swedish Edmonds, PacMed Clinics, and Providence Health & Services – Western Washington.

3.      Provision of effective communication for d/Deaf persons in a healthcare facility requires a range of communication aids and services be made available, including qualified sign language interpreters. Healthcare providers must develop and effectively implement policies and procedures to ensure that the patient's desired form of communication is given primary consideration, and that the ultimate communication method only strays from that request when it is determined to cause an undue burden or fundamental alteration to the service.

4.      Qualified sign language interpreters must be made readily available for those patients who need such aids and services. Providing effective communication also requires

---

[1] The lowercase "deaf" refers to the people with severe-profound hearing loss. The capitalized word "Deaf" refers to a person who is both deaf and identifies as a member of Deaf Culture; a linguistic minority with its own language (signed language) and culture. We use d/Deaf to encompass the broader group of individuals with severe-profound hearing loss while also recognizing the Deaf identity.

COMPLAINT - 2; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

healthcare providers to utilize alternative methods when it is infeasible to obtain an on-site, qualified sign language interpreter immediately or when they must transmit urgent information before a qualified interpreter arrives on site. Such alternative measures include technologies such as Video Remote Interpreting ("VRI"), through which a qualified sign language interpreter located off-site is immediately available through internet video communications. For VRI to be effective, the medical facility must have in place adequate internet speed, coverage, and reliability; hardware; and software. Additionally, healthcare providers must consider whether the patient is able to adequately observe the remote interpreter. Frequently, VRI will not be sufficient to provide effective communication in medical settings apart from facilitating interim communications.

5. Defendants have repeatedly violated these requirements for effective communication with d/Deaf patients, by denying d/Deaf patients sign language interpreters either in person or through effective VRI technology and by refusing necessary modifications to policies and procedures. Without effective communication, d/Deaf Providence patients have had to undergo serious medical procedures and make decisions for care without getting meaningful answers to questions. They have been subjected to unequal and demeaning treatment due to their disabilities and have been excluded from fully participating in their medical care due to the lack of effective communication.

6. For example, Defendants have denied requests by all three Named Plaintiffs for in-person American Sign Language ("ASL") interpreters at many of their appointments at Providence facilities. In several cases, Defendants have attempted to use VRI in place of in-person ASL interpreters, which has been marked by significant technical issues, preventing Ms. Spencer and Ms. Rodriguez from effectively communicating with their healthcare providers, and causing distress and confusion. And when Mr. Viglianco arrived for a pre-scheduled surgical procedure at a Providence facility, there was no in-person ASL interpreter present, and the VRI machine did not work, so he had to communicate via written English using pen and paper. This

COMPLAINT - 3; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

1  prevented him from asking all the questions he wanted to ask. Defendants did not even secure

2  effective interpretation services for post-operative discussions, and Mr. Viglianco was again

3  forced to communicate about discharge instructions via handwritten English which left him

4  confused and worried that he did not get all the pertinent information.

5     7.     The Named Plaintiffs' experiences are illustrative of Defendants' actions and

6  inactions that result in persistent discriminatory conditions at its healthcare facilities in Western

7  Washington. d/Deaf patients routinely experience difficulty communicating with medical staff as

8  well as hardship and anxiety. Equal access to healthcare is a basic right under federal civil rights

9  laws. The Americans with Disabilities Act was enacted thirty-two years ago today precisely to

10  ensure that all aspects of mainstream life are accessible to people with disabilities, including

11  d/Deaf persons.

12     8.     Due to repeated discrimination at Providence facilities, d/Deaf people have

13  struggled to obtain healthcare services. Some have been deterred from going to, or returning to,

14  Providence facilities for healthcare services due to lack of effective communication access.

15     9.     Providence is the largest health care provider in Washington with hospitals,

16  clinics, senior care centers, hospice, and home health services in communities across the state,

17  including in the Puget Sound Region of Western Washington. It is unacceptable that the largest

18  healthcare provider in Washington state subjects patients with disabilities to unequal and

19  discriminatory conditions. This lawsuit seeks to correct this discriminatory situation for all

20  d/Deaf persons subjected to such unacceptable conditions.

21     10.     Named Plaintiffs bring this action on behalf of themselves and all d/Deaf persons

22  who have been and are being discriminated against due to Defendants' unlawful failure to

23  provide effective communication and equal access to healthcare services at facilities in

24  Providence's Puget Sound Region.

25     11.     Federal access laws were enacted to ensure that persons with disabilities receive

26  equal access to services of private entities including access to healthcare services. *See* 29 U.S.C.

COMPLAINT - 4; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

§ 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")); 42 U.S.C. § 12101(a)(7)

(Americans with Disabilities Act ("ADA")); and 42 U.S.C. § 18116(a) (Section 1557 of the

Affordable Care Act ("Section 1557")). Defendants have excluded Named Plaintiffs from

participation in and denied them the benefits of the healthcare programs and services offered at

healthcare facilities owned and/or operated by Defendants. The violations at issue include:

a) failing to provide qualified sign language interpreters as necessary auxiliary aids or services;

b) insisting on attempting to provide sign language interpretation via VRI despite insufficient

technical capacity to do so; c) failing to provide necessary auxiliary aids or services in a timely

manner; d) refusing to provide healthcare services due to an individual's hearing disability; and

e) failing to sufficiently train staff regarding the provision of effective communication to d/Deaf

individuals.

      12.    Named Plaintiffs thus bring this action to remedy violations of Title III of the

ADA, 42 U.S.C. sections 12182, *et seq.* and its accompanying regulations; Section 504 of the

Rehabilitation Act, 29 U.S.C. sections 794, *et seq.* and its accompanying regulations; and Section

1557 of the Affordable Care Act ("ACA"), 42 U.S.C. section 18116(a).

## <u>JURISDICTION AND VENUE</u>

      13.    This is an action for declaratory and injunctive relief, brought pursuant to Title III

of the ADA, 42 U.S.C. sections 12182 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C.

sections 794, *et seq.*; and Section 1557 of the ACA, 42 U.S.C. section 18116(a) to redress

systemic civil rights violations against d/Deaf individuals by Defendants.

      14.    This Court has jurisdiction over the claims alleged herein arising under the ADA,

Section 504, and Section 1557 pursuant to 28 U.S.C. sections 1331 and 1343.

      15.    This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28

U.S.C. sections 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

COMPLAINT - 5; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

16.     Venue is proper in the Western District of Washington because Defendants reside in this District within the meaning of 28 U.S.C. section 1391, and because the events, acts, and omissions giving rise to Named Plaintiffs' claims occurred in this District.

## PARTIES

17.     Defendant Providence St. Joseph Health ("PSJH") is a Washington non-profit organization with headquarters in Renton, Washington. PSJH operates a healthcare system made up of various member entities, including Providence Health & Services, Western HealthConnect, Providence Health & Services – Washington ("Providence – Washington"), Providence Health & Services – Western Washington ("Providence – Western Washington"), Swedish Health Services, Swedish Edmonds, and PacMed Clinics. PSJH is the parent and sole corporate member of Providence Health & Services. Providence Health & Services is the sole corporate member of Providence – Washington, which owns, operates, and/or manages Providence Regional Medical Center Everett ("PRMC-Everett") in Everett, Washington; and is a co-corporate member of Providence Health & Services – Western Washington.

18.     Defendant Western HealthConnect is a Washington non-profit corporation with headquarters in Renton, Washington. Western HealthConnect is the sole corporate member of Swedish Health Services, Swedish Edmonds, and PacMed Clinics; and is a co-corporate member of Providence Health & Services – Western Washington.

19.     Named Plaintiff Kathleen Spencer lives in Snohomish County, Washington. Ms. Spencer is Deaf and uses ASL as her primary method of communication. Ms. Spencer is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 USC section 12102(1), 28 C.F.R. section 35.104, and 29 U.S.C. section 705(20)(B). Ms. Spencer has previously sought medical services at multiple Providence facilities and anticipates future visits to Providence locations.

20.     Named Plaintiff Jason Viglianco resides in Marysville, Washington. Mr. Viglianco is Deaf, and his primary method of communication is ASL. Mr. Viglianco is a

COMPLAINT - 6; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

"qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations including 42 USC section 12102(1), 28 C.F.R. section 35.104, and 29 U.S.C. section 705(20)(B). Mr. Viglianco has sought medical services at a Providence facility and anticipates future visits to this and/or other Providence locations.

21.     Named Plaintiff Mandy Rodriguez lives in Edmonds, Washington. Ms. Rodriguez is Deaf, and her primary method of communication is ASL. Ms. Rodriguez is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statues and regulations including 42 USC section 12102(1), 28 C.F.R. section 35.104, and 29 U.S.C. section 705(20)(B). Ms. Rodriguez has sought care at multiple Providence facilities and anticipates future visits to Providence locations.

22.     The proposed class consists of and all d/Deaf persons who have sought or will seek healthcare services at any Providence facility in Providence's Puget Sound Region. Hereafter, references in this document to "Plaintiffs" shall be deemed to include the Named Plaintiffs and each member of the proposed class, unless otherwise indicated.

## FACTS THAT APPLY TO ALL CLAIMS

23.     Providence's healthcare system is currently organized into geographic regions.

24.     Providence's Puget Sound Region includes three service areas: North Puget Sound, Central Puget Sound, and South Puget Sound.

25.     In the greater Puget Sound area of Washington, Providence Swedish operates eight hospitals in King, Snohomish, Lewis and Thurston Counties, and a network of over 200 primary care and specialty clinics throughout the Seattle area.

26.     The following facilities, among others, fall within Providence's Puget Sound Region: Swedish Edmonds; Swedish Medical Center Campuses (Ballard, Issaquah, Cherry Hill, and First Hill); Providence Centralia Hospital; PRMC-Everett; Providence St. Peter Hospital; Providence Marionwood; Providence Mother Joseph Care Center; and Providence Mount St. Vincent.

COMPLAINT - 7; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

27.     PSJH's corporate officers and supporting staff oversee the management activities performed on a day-to-day basis by the management staff of each region.

28.     PSJH's corporate staff provides centralized services and coordination in the areas of operations, technical support, quality of care, and planning and policy development.

29.     As a result of Defendants' deficient policies, practices, and/or procedures with regard to effective communication, d/Deaf patients have been discriminated against and denied full and equal access to the benefits of Defendants' healthcare services.

30.     Defendants have failed and are failing to provide qualified interpreters as a necessary auxiliary aid or service. Despite d/Deaf patients' immediate requests for interpreters upon arrival at Providence's emergency rooms and when scheduling medical appointments, Defendants do not give primary consideration to the requests of d/Deaf individuals and Defendants often fail to assess whether in-person interpreting services are available at all.

31.     Defendants have failed and are failing to adequately train staff at Providence facilities regarding the provision of effective communication. As a result, doctors and other staff treat d/Deaf patients differently than other patients. For example, they often do not look d/Deaf patients in the eyes, direct their visual attention to interpreters rather than to patients who are d/Deaf, and do not know how to properly locate and use auxiliary aids and services.

32.     Defendants have failed and are failing to create and implement effective policies at Providence facilities to ensure effective communication for individuals who are d/Deaf. For instance, Providence has no effective policy to ensure that an individual's requested auxiliary aid is given primary consideration, that a qualified interpreter is provided or even contacted where necessary for effective communication, or that staff know what aids and services are available and where they are located.

COMPLAINT - 8; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

**EXPERIENCES OF THE NAMED PLAINTIFFS**

33.     The experiences of Named Plaintiffs Spencer, Vigliano, and Rodriguez are representative of the discrimination experienced by d/Deaf persons at Providence healthcare facilities.

**A.      Kathleen Spencer**

34.     Named Plaintiff Kathleen Spencer is Deaf and ASL is her primary form of communication.

35.     Since at least early 2020, Ms. Spencer has received health care services at multiple Providence facilities.

36.     On or around January 16, 2020, Ms. Spencer visited PRMC-Everett for an exam to assess breast pain. During a mammogram, rather than wait for the in-person ASL interpreter to provide interpretation of the instructions for the procedure to Ms. Spencer, the technician became impatient with the interpretation process and physically manipulated Ms. Spencer's body so aggressively that Ms. Spencer describes the encounter as assaultive.

37.     On or around February 11, 2020, Ms. Spencer visited PRMC-Everett for a follow-up appointment to receive the results of her mammogram and a biopsy from a specialist. At scheduling, Ms. Spencer requested in-person ASL interpretation. She also contacted the office the day before the appointment to make sure that an interpreter would be provided. However, when she arrived at the appointment, staff told her that no interpreter had been confirmed and offered for her to use a "live Skype interpreter" (i.e. VRI) instead. Due to the nature of the medical conditions to be discussed, she declined to use VRI; and having already wasted so much time on this unsuccessful appointment, she declined to reschedule. Instead, Ms. Spencer called the specialist to talk about her test results over the phone via Video Relay Service ("VRS"). VRS did not provide Ms. Spencer the benefits of an in-person medical appointment, which is her preference due to the increased clarity of non-verbal communication when sharing the same physical space.

COMPLAINT - 9; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

38.     Following the mammogram and biopsy, Ms. Spencer was referred to a specialist at Providence North Everett General Surgery for further discussion of the results and treatment options. The physician requested that an initial appointment be conducted in person to complete an examination. Ms. Spencer requested an in-person ASL interpreter when she scheduled this appointment for April 7, 2020. Due to the early impacts of the COVID-19 pandemic, the appointment was rescheduled to May 26, 2020. However, the facility did not schedule an interpreter for that appointment. As a result, the appointment again had to be rescheduled for the morning of June 2, 2020.

39.     On or around the evening of June 1, 2020, Ms. Spencer received a call from Providence North Everett General Surgery informing her that yet again, an interpreter had not been obtained for her appointment the following day. Having already rescheduled this specific appointment twice, Ms. Spencer agreed to use VRI in order not to further delay her medical care.

40.     During the June 2, 2020 appointment, the VRI screen froze, and the signal disconnected several times. Ms. Spencer and the specialist had to pause every few sentences until the video unfroze. They moved the VRI stand to different positions in the room and opened the door to see if the signal could be improved, but none of these measures worked. This appointment also included examination from a prone position, during which Ms. Spencer could not see the VRI screen very well. It was the worst VRI experience Ms. Spencer had ever had— both she and the specialist were distracted the entire time because of the technical difficulties. Ms. Spencer was extremely frustrated because she was trying to focus on her appointment, but instead was preoccupied by the VRI freezing and trying to find locations where it would work. This prevented Ms. Spencer from speaking normally, as she had to try to fit her responses and questions in between VRI freezes and she would then forget what she wanted to say. Even the specialist expressed frustration about the VRI failures, indicating that she would not use VRI again.

COMPLAINT - 10; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

41.     On or around September 10, 2020, Ms. Spencer visited PRMC-Everett for a follow-up ultrasound. At scheduling, Ms. Spencer requested an in-person interpreter for this appointment. She called two days before the appointment to make sure there would be an interpreter in person. But there was no interpreter present when she showed up for the appointment. The receptionist incorrectly told Ms. Spencer via a written note that the reason there was no in-person interpreter was that Ms. Spencer did not request one. A manager subsequently informed Ms. Spencer that in fact the interpreter had been requested but had not shown up. VRI was used instead, and again there were technical issues. Ms. Spencer asked the VRI interpreter if she was having trouble understanding Ms. Spencer, and the interpreter responded that she was. The VRI interpreter reported to Ms. Spencer that the image of Ms. Spencer was blurry and grainy. Ms. Spencer also had difficulty seeing the screen while she was lying down for the ultrasound.

42.     On or around August 26, 2020, Ms. Spencer visited the emergency department at PRMC-Everett, which is approximately six miles from her home. While Ms. Spencer knew that an in-person interpreter would have been more effective for her, she requested VRI upon arrival given the unplanned nature of the visit. The receptionist did not seem to know what VRI was. When Ms. Spencer was first called back to take her vitals, the nurse left to look for the VRI machine and returned about ten to fifteen minutes later saying it was already being used for other patients. Several hours later, Ms. Spencer was seen by a different nurse for bloodwork and a urine sample; the VRI machine was still unavailable. When a bed opened for Ms. Spencer several hours later, they located and set up the VRI machine, however, there were technical issues again, and the doctor appeared to Ms. Spencer to be frustrated by the ordeal. Ms. Spencer was then moved to get an ultrasound; the examination room did not have VRI, and the technician communicated with Ms. Spencer via written English by pen and paper. Ms. Spencer could not fully communicate without ASL. She tried to figure out the technician's instructions, and what

COMPLAINT - 11; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

1   the technician needed from her, but felt that she was guessing as written English could not get all

2   the necessary points across.

3       43.     On or around January 26, 2021, Ms. Spencer had appointments at the Swedish

4   Edmonds Campus and Swedish Mill Creek Campus. Ms. Spencer requested an in-person ASL

5   interpreter for both appointments when scheduling in advance. Prior to the appointments,

6   Ms. Spencer received a phone call confirmation that there would be an interpreter present.

7       44.     An in-person interpreter was provided for the Mill Creek appointment, and

8   communication went smoothly. However, upon arrival at Swedish Edmonds, there was no in-

9   person interpreter present. Ms. Spencer inquired with the receptionist, who brought out a VRI

10  machine. The receptionist was rude and unprofessional. While still in the lobby, Ms. Spencer

11  contacted the Providence Interpreting Services Department on speaker so that the receptionist

12  could listen to the conversation.  Throughout the call, the receptionist interrupted Ms. Spencer

13  and made threats about cancelling her appointment before she was seen by the doctor. The

14  Interpreting Services Department informed Ms. Spencer that the confirmation call she had

15  received was only for her earlier appointment at Swedish Mill Creek, as Swedish Edmonds had

16  never put in the ASL interpreter request.[2]

17      45.     Ms. Spencer was stunned and shook up by how the receptionist treated her and

18  the fact that this individual had the ability to take away an appointment she had waited months

19  for simply because Ms. Spencer advocated for her communication needs. Ultimately,

20  Ms. Spencer decided to go forward with VRI to avoid further delay.

21      46.     Unfortunately, Ms. Spencer again experienced technical issues due to the VRI,

22  which impacted her appointment. The interpreter and Ms. Spencer struggled to see each other

23  clearly because of connection problems and the orientation of the VRI machine during the exam.

24  What would have taken about twenty to twenty-five minutes with an in-person interpreter ended

25  up taking over forty minutes. Due to this experience, Ms. Spencer decided to travel to UWMC in

26

---

[2] Ms. Spencer was originally told that this was because the clinic prohibits in-person interpreters but later learned that this is not the policy at Swedish Edmonds and the Interpreting Services Department was incorrect.

COMPLAINT - 12; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

Seattle to obtain the necessary healthcare services there instead of Swedish Edmonds. Ms. Spencer continues to receive these specific healthcare services in Seattle because communication access is better there, but would prefer to go to Providence because it is far closer. While it takes about forty minutes to get to Swedish Edmonds, it is about an hour to Seattle without traffic and it is significantly longer with traffic—sometimes it can take an hour and a half or more to travel between Ms. Spencer's home and UWMC in Seattle.

47.     On or around January 27, 2021, Ms. Spencer attempted to schedule an appointment at PRMC-Everett. The staff first noted two upcoming openings within the week, then rescinded those dates as unavailable and stated that the next open date was not until March 2021. When Ms. Spencer asked why the previous two dates were no longer available, the scheduler explained that they were Saturdays, and it would be "too much extra work" for the staff to schedule an ASL interpreter for a Saturday appointment. Ms. Spencer called the Interpreting Services Department who confirmed there was no policy preventing ASL interpreters from being provided for Saturday appointments, and the Interpreting Services Department called the clinic who eventually relented and gave her a Saturday appointment. Being told that it would be "too much extra work" to provide her with accommodations makes Ms. Spencer angry that her concerns are not being addressed and that she has to spend extra time herself to get timely appointments.

48.     On or about June 21, 2022, Ms. Spencer returned to PRMC-Everett for a mammogram. The facility did schedule an in-person interpreter for this appointment, however staff did not know this in advance, as they spent time setting up the VRI machine before Ms. Spencer entered the room and said that no one had told them that an interpreter was present. This delayed the appointment. During the mammogram, staff appeared to be uncomfortable communicating with Ms. Spencer and did not know how to use an interpreter. For instance, they looked at the interpreter and talked to them instead of addressing statements and questions to Ms. Spencer. The staff person performing the mammogram also asked Ms. Spencer a number of

COMPLAINT - 13; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

questions while she was holding different positions for the imaging. Ms. Spencer told the staff a few times that she could not sign while holding positions, but the staff disregarded this information. Ms. Spencer was distracted and frustrated by the situation and the staff person's lack of training in serving Deaf patients.

49.    Ms. Spencer is frustrated and disappointed that she consistently has to deal with Providence's failures to provide her accommodations for her disability and the communication fallout that ensues. She is exhausted from having this happen over and over, and there are times where she dreads going to appointments at Providence because of the lack of accessibility. Nearly every time she goes to an appointment at Providence, she has to advocate for both her health and her accommodation needs. Having to explain complex medical issues through inconsistent communication modes is frustrating and difficult and sometimes she is forced to put her health over her needs as a Deaf person—a choice she should never have to make.

**B.    Jason Viglianco**

50.    Named Plaintiff Jason Viglianco is Deaf and ASL is his primary form of communication.

51.    Mr. Viglianco has received healthcare services at PRMC-Everett.

52.    Mr. Viglianco's primary care provider[3] referred him to PRMC-Everett for surgery in 2020. It is Mr. Viglianco's understanding that his primary care provider will continue to refer him to receive specialty care services at PRMC-Everett.

53.    On or around August 28, 2020, Jason Viglianco underwent surgery at PRMC-Everett. Mr. Viglianco called Providence twice prior to the surgery to confirm that an interpreter would be present in person for his appointment.

54.    When Mr. Viglianco arrived at the hospital, there was no interpreter. He agreed to use VRI to proceed with the appointment, but the connection was poor, and the signal kept dropping out. The nurse struggled with it before giving up and taking it out of the room.

---

[3] Mr. Viglianco receives primary care at The Everett Clinic. While The Everett Clinic is not a Providence facility, it has an ongoing partnership with PRMC-Everett.

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

55. This upset Mr. Viglianco and he was worried about moving forward without an interpreter because he had poor experiences going through surgeries without ASL interpreters growing up in West Virginia, where he was unable to share his needs with his medical providers. He felt that he should have called off the surgery and rescheduled with an in-person ASL interpreter but did not want to delay his important medical care. He felt that the doctors wanted to move on without an ASL interpreter, which was upsetting.

56. Ultimately, during surgical prep Mr. Viglianco communicated with his medical providers in written English via pen and paper, and, for a short time, a staff member who knew some ASL but was not proficient attempted to interpret.

57. Mr. Viglianco went through the surgery without a qualified interpreter and continued to communicate via pen and paper after the surgery was completed. This made him very nervous and left him unsatisfied. He did not feel comfortable writing back and forth as he did not want to make mistakes. Communicating about medical subjects via written English was confusing for Mr. Viglianco, particularly after surgery when he was still groggy and having a harder time reading and writing.

58. At discharge, there were questions that Mr. Viglianco would have asked but did not because there was no interpreter. He wanted to know about any next steps and what medication they gave him, as well as what to do at home, but because he was only offered the option of communicating via written English, his communication was very limited.

59. In addition, because there was no interpreter, Mr. Viglianco believes there may have been some miscommunication regarding his insurance coverage, as it seems that a portion of his bill was processed through Medicare, which he does not have.

**C.   Mandy Rodriguez**

60. Named Plaintiff Mandy Rodriguez is Deaf, and ASL is her primary form of communication.

COMPLAINT - 15; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

61. Ms. Rodriguez began seeing a primary care physician at PacMed Clinic's Lynnwood location in Lynnwood, Washington in or around June 2018. Over the next several years, Ms. Rodriguez saw primary care physicians at multiple Providence facilities, including PacMed Clinic's Lynnwood, Northgate, and Canyon Park locations. None of these Providence healthcare providers met her communication needs.

62. Ms. Rodriguez visited primary care providers at the Lynnwood, Northgate, and Canyon Park PacMed locations from June 2018 through March 2022, and at each location VRI was used almost exclusively, even when she requested in-person interpreters. Unfortunately, at each location Ms. Rodriguez experienced regular technical difficulties that rendered this mode of communication ineffective. During primary care appointments and more specialized appointments, attempts to communicate using VRI were characterized by long delays while staff attempted to connect and reconnect the device and a screen that repeatedly froze. Given her poor experiences using VRI, Ms. Rodriguez asked for an in-person ASL interpreter when scheduling all appointments, but rarely received one.

63. Due to these consistent issues, Ms. Rodriguez has had to condense explanation of her symptoms and health care needs rather than recounting them in greater detail, making things briefer than she would have liked and leading her to not raise health concerns that she wanted to. These experiences left Ms. Rodriguez very frustrated and caused her to change primary care physicians multiple times in an effort to find a Providence location that would provide her with effective communication.

64. In or around Spring 2021, Ms. Rodriguez had a telehealth appointment with her primary care physician at Lynnwood for which she requested an ASL interpreter. However, the interpreter did not show up, and Ms. Rodriguez's doctor told her she would need to come to the clinic to hold the appointment in person. Ms. Rodriguez felt this was unfair because people who are hearing have the ability to use telehealth, but she did not have the benefit of this service. In

COMPLAINT - 16; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

1  addition, being told to otherwise come in person was upsetting to Ms. Rodriguez because the

2  VRI at Lynnwood was always very slow or froze, leading to communication issues.

3      65.    Ms. Rodriguez felt that she had to transfer her primary care from Lynnwood due

4  to the communication barriers, and in or around September 2021 she began to see a primary care

5  physician at PacMed's Canyon Park location hoping that she would receive better

6  communication access during her medical appointments. Two weeks before Ms. Rodriguez's

7  first appointment with her new primary care doctor at Canyon Park, she contacted the medical

8  office to request an in-person interpreter. However, when she arrived there was no in-person

9  interpreter. The office told her no interpreter was available, but no one had informed her prior to

10 the appointment that there would be no in-person interpreter. The medical staff used VRI instead

11 and the screen was pixelated and froze repeatedly. The interpreter did not seem to understand

12 what Ms. Rodriguez was saying and she did not believe the doctor was getting all of the

13 information she was trying to communicate. After the appointment, Ms. Rodriguez called

14 Canyon Park via VRS to talk to a nurse and explain the things that she was not able to say to the

15 doctor during the appointment.

16     66.    In or around December 2021, Ms. Rodriguez contacted the Canyon Park clinic

17 around 11:00 a.m. to schedule a same-day Zoom appointment with her primary care physician

18 later that afternoon in order to get an MRI referral. The appointment was scheduled for

19 approximately 4:00 p.m. and, at the time of scheduling, Ms. Rodriguez requested an ASL

20 interpreter for this appointment. The office staff represented that the request could be

21 accommodated. However, when Ms. Rodriguez logged on for the appointment, no one ever

22 joined. She reached out to the front desk to inquire about the appointment, and staff informed her

23 that her appointment had been canceled because there was no interpreter scheduled.

24 Ms. Rodriguez was not informed of any cancellation prior to the scheduled appointment.

25     67.    After this incident, Ms. Rodriguez decided to transfer her primary care to

26 PacMed's Northgate location in the hope that she would receive better communication access

COMPLAINT - 17; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

with a new primary care provider, despite prior issues with VRI at Northgate in 2019.

Unfortunately, she experienced more of the same. During a January 18, 2022 appointment at

Northgate, VRI was used to provide interpretation and the image was blurry and broken up.

68.     At the conclusion of the January 18 appointment, Ms. Rodriguez scheduled a

follow-up appointment for more than a week later and requested an in-person interpreter. When

she arrived on January 27, 2022, there was no interpreter present. The reception staff said that

they had requested one and confirmed the request, but no one had arrived. Staff called the

interpretation agency and found out that the interpreter had canceled; the front desk manager

stated that they had no idea. The doctor used VRI to communicate instead, but the image froze,

and the picture was blurry, making communication difficult.

69.     Ms. Rodriguez consistently requested an in-person ASL interpreter when

scheduling appointments at these PacMed clinics. However, they never contacted her ahead of

appointments for which she had requested an in-person interpreter to let her know that they were

not able to schedule one and would need to proceed with VRI during the appointment.

70.     Ms. Rodriguez has since transitioned her primary care to Swedish Mill Creek.

## CLASS ACTION ALLEGATIONS

71.     Named Plaintiffs bring this action on behalf of themselves and all d/Deaf persons

who have been and are being discriminated against due to Defendants' unlawful failure to

provide effective communication and equal access to healthcare services at facilities in

Providence's Puget Sound Region, as a class action under Rule 23(b)(2) of the Federal Rules of

Civil Procedure.

72.     Each member of the proposed class is a "qualified person with a disability" and/or

a person with "a disability" pursuant to Title III of the ADA; Section 504 of the Rehabilitation

Act; and Section 1557 of the ACA. 42 USC § 12102(1); 29 U.S.C. § 794, *et seq.*; 42 U.S.C.

§ 18116(a).

COMPLAINT - 18; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

73.     The persons in the proposed class are so numerous that the joinder of all such persons is impracticable and disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The class consists of hundreds of persons in the Puget Sound Region.

74.     According to U.S. Census Bureau data, over 149,000 individuals across Snohomish, King, Pierce, Skagit, Kitsap, and Thurston Counties report that they are deaf or have serious difficulty hearing.[4]

75.     The Puget Sound Region had a total inpatient market share of 28 percent in their service areas in 2020, as reported by the Comprehensive Hospital Abstract Reporting System.

76.     Defendants have failed and continue to fail to comply with the ADA, Section 504, and Section 1557 in its implementation of policies, procedures, and/or practices with regard to the provision of effective communication for people who are d/Deaf.

77.     Defendants have not adopted and/or do not enforce appropriate policies, procedures, and/or practices to ensure nondiscrimination against people who are d/Deaf and equal access to services for people who are d/Deaf.

78.     There are common questions of law and fact involved affecting the proposed class in that they all are being denied their civil rights to access to Defendants' healthcare facilities and services due to the denial of aids, services and procedures necessary for effective communication.

79.     The violations of the ADA, Section 504, and Section 1557 set forth in detail herein injure all members of the proposed class and violate their rights in a similar way.

---

[4] 2016-2020 American Community Survey 5-Year Estimates Subjects Table, Table ID S1810, available at https://data.census.gov/cedsci/table?q=disability&g=0500000US53033,53035,53053,53057,53061,53067. The ACS reports a person as having a hearing difficulty if they answer yes to the question: "Is this person deaf or does he/she have serious difficulty hearing?" See U.S. Dep't of Com., ACS Questionnaire Informational Copy 14 (2020), available at https://www2.census.gov/programs-surveys/acs/methodology/questionnaires/2020/quest20.pdf (question 18(a)).

COMPLAINT - 19; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

80. Defendants have acted or refused to act on grounds generally applicable to the proposed class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole.

81. Class claims are brought for the purposes of obtaining declaratory and injunctive relief only.

82. Named Plaintiffs will fairly and adequately represent the interests of the proposed class. They have no interests adverse to the interests of other members of the proposed class and have retained counsel who are competent and experienced in litigating complex class actions, including large-scale disability rights class action cases.

83. The requirements of Federal Rule of Civil Procedure 23 are met with regard to the proposed class in that:

    a) The proposed class is so numerous that it would be impractical to bring all class members before the Court;

    b) There are questions of law and fact which are common to the proposed class;

    c) The Named Plaintiffs' claims for declaratory and injunctive relief are typical of the claims of the proposed class;

    d) The Named Plaintiffs will fairly and adequately represent common class interests and are represented by counsel who are experienced in class actions and the disability rights issues in this case; and

    e) Defendants have acted or refused to act on grounds generally applicable to the proposed class.

84. The common questions of law and fact, shared by the Named Plaintiffs and all class members, include but are not limited to:

    a) What the communication access requirements are under Title III, Section 504, and Section 1557;

COMPLAINT - 20; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

b)    Whether Defendants' policies and procedures result in reliance on VRI without consideration for whether it is an effective form of communication;

c)    Whether Defendants meet the technical and other requirements needed for VRI to be effective;

d)    Whether Defendants have received federal financial assistance so as to make their facilities and services subject to Section 504;

e)    Whether Defendants have any undue burden defense to part or all of the communication access needs of the class under Title III;

f)    Whether Defendants are violating the federal civil rights laws at issue by failing to provide auxiliary aids and services that are necessary to make Providence's healthcare facilities and services accessible to and useable by persons who are d/Deaf, and otherwise discriminating against persons who are d/Deaf, as set forth above.

## FIRST CAUSE OF ACTION
### Title III of the Americans with Disabilities Act of 1990
### 42 U.S.C. §§ 12182 *et seq.*

85.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

86.    Title III of the ADA ("Title III") provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

87.    Defendants are entities other than state or local governments or instrumentalities thereof.

COMPLAINT - 21; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

88.     Defendants own or operate healthcare facilities including hospitals, clinics, and professional offices of health care providers, where Defendants provide healthcare services.

89.     Defendants' healthcare services are available to the public.

90.     Named Plaintiffs and members of the proposed Class are individuals who are deaf and are thus individuals with disabilities within the meaning of the ADA.

91.     Plaintiffs have sought healthcare services at Defendants' healthcare facilities and will continue to seek healthcare services at such facilities.

92.     By failing to provide effective communication, including through the failure to provide auxiliary aids and services, Defendants fail to provide d/Deaf persons with equal access to the healthcare services and accommodations they provide to the public, in violation of Title III.

93.     Defendants' failure to make reasonable modifications to their policies, practices, or procedures when necessary to ensure d/Deaf individuals have full and equal access to their healthcare services and accommodations violates the requirements of Title III.

94.     Defendants' failure to ensure that its VRI services provide real-time, full-motion video and audio over a connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; a sharply delineated image; and adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI violates Title III.

95.     Defendants' conduct constitutes an ongoing and continuous violation of Title III, and unless restrained from doing so, Defendants will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no adequate remedy at law. Consequently, Plaintiffs are entitled to injunctive relief pursuant to section 308 of the ADA, 42 U.S.C. § 12188(a), as well as reasonable attorneys' fees and costs, 42 U.S.C. § 12205

WHEREFORE, Plaintiffs pray for relief as set forth below.

COMPLAINT - 22; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

## SECOND CAUSE OF ACTION
### Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794 *et seq.*

96.     Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

97.     Section 504 provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

98.     Defendants receive federal financial assistance within the meaning of Section 504 and its implementing regulations, and have received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

99.     Plaintiffs have physical impairments that substantially limit one or more major life activities. They are qualified individuals with disabilities within the meaning of Section 504 and are otherwise qualified to participate in and receive benefits from Defendants' healthcare services.

100.     Recipients of federal financial assistance, including Defendants, are prohibited form denying qualified persons with a disability any health, welfare, or other social services or benefits on the basis of disability. 45 C.F.R. § 84.52(a)(1).

101.     Recipients of federal financial assistance, including Defendants, may not afford a qualified individual with a disability an opportunity to receive health, welfare, or other social services or benefits that is not equal to that afforded people without disabilities. 45 C.F.R. § 84.52(a)(2).

102.     Recipients of federal financial assistance, including Defendants, may not, solely on the basis of disability, provide a qualified person with a disability health, welfare, or other social services or benefits that are not as effective as the benefits or services provided to others. 45 C.F.R. § 84.52(a)(3).

COMPLAINT - 23; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

103.    Recipients of federal financial assistance, including Defendants, must "provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question." 45 C.F.R. § 84.52(d)(1).

104.    Auxiliary aids may include interpreters and other aids for persons with impaired hearing. 45 C.F.R. § 84.52(d)(3).

105.    Defendants discriminate against Plaintiffs and members of the proposed class solely by reason of their disabilities in violation of Section 504 and its implementing regulations. Defendants discriminatory conduct includes, but is not limited to:

a) excluding Plaintiffs from the opportunity to participate in and benefit from Defendants' healthcare programs, services, and activities;

b) affording Plaintiffs an opportunity to participate in or benefit from healthcare services that is not equal to the opportunity afforded hearing individuals;

c) failing to provide Plaintiffs with appropriate auxiliary aids where necessary to afford them an equal opportunity to benefit from healthcare services; and

d) failing to make reasonable modifications in policies, practices, and procedures when the modifications are necessary to avoid discrimination on the basis of disability and would not fundamentally alter the nature of Defendants' services, programs, or activities.

106.    Defendants' violations of Section 504 have harmed and will continue to harm Plaintiffs in the future.

107.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

108.    Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs in bringing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

COMPLAINT - 24; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

1
2

**THIRD CAUSE OF ACTION**
**Section 1557 of the Affordable Care Act**
**42 U.S.C. § 18116(a)**

3
4

109.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs.

5
6
7
8
9

110.    Section 1557 of the Affordable Care Act ("Section 1557") provides in pertinent part: "[A]n individual shall not, on the ground prohibited under . . . section 794 of title 29 [Section 504], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance…." 42 U.S.C. § 18116(a).

10
11
12

111.    Plaintiffs are individuals with physical impairments that substantially limit their hearing and are therefore individuals with disabilities within the meaning of Section 1557. *See* 45 C.F.R. § 92.102(c).

13
14
15

112.    Defendants are principally engaged in the business of providing healthcare and receive Federal financial assistance provided by the U.S. Department of Health and Human Services.

16

113.    Defendants' violation of Section 504 also violates Section 1557.

17
18
19

114.    Defendants' failure to take appropriate steps to ensure that communications with Plaintiffs are as effective as communications with others is a violation of Section 1557. *See* 45 C.F.R. § 92.102(a).

20
21
22

115.    Defendants' failure to provide appropriate auxiliary aids and services where necessary to provide Plaintiffs an equal opportunity to benefit from Defendants' healthcare services violates Section 1557. *See* 45 C.F.R. § 92.102(b).

23
24
25

116.    Defendants' failure to give primary consideration to the requests of individuals with disabilities in determining what types of auxiliary aids and services are necessary violates Section 1557. *See* 45 C.F.R. § 92.102(b); 28 C.F.R § 35.160(b)(2).

26

COMPLAINT - 25; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

117.    Defendants' failure to ensure that its VRI services provide real-time, full-motion video and audio over a connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; a sharply delineated image; and adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI violates Section 1557. *See* 45 C.F.R. § 92.102(b); 28 C.F.R § 35.160(d).

118.    Defendants' failure to make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability and would not fundamentally alter the nature of the health program or activity violates Section 1557. *See* 45 C.F.R. § 92.105.

119.    Defendants' violations of Section 1557 have harmed and will continue to harm Plaintiffs and members of the proposed class in the future.

120.    Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

121.    Plaintiffs are entitled to declaratory and injunctive relief, as well as reasonable attorneys' fees and costs in bringing this action.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Declaratory Relief

122.    Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

123.    An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, are informed, and believe that Defendants deny that they are violating Title III of the ADA, Section 504 of the Rehabilitation Act, and Section 1557 of the Affordable Care Act.

124.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

COMPLAINT - 26; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

WHEREFORE, Plaintiffs request relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment as follows:

A.    A declaration that Defendants' conduct as alleged herein has violated and continues to violate Title III, Section 504, Section 1557, and the regulations promulgated under those statutes;

B.    Issuance of a permanent injunction requiring Defendants to undertake remedial measures to mitigate the effects of Defendants' past and ongoing violations of Title III, Section 504, Section 1557, and the regulations promulgated under those statutes. At a minimum, Plaintiffs request that Defendants be enjoined to take the following actions:

    1.    Provide qualified interpreters where necessary for effective communication with d/Deaf individuals.

    2.    Modify policies, practices, and procedures to ensure that d/Deaf individuals are not discriminated against, including:

        i.    Making arrangements with interpreting agencies to ensure that qualified sign language interpreters are made available promptly when needed; and

        ii.    Making necessary provisions to ensure that VRI services meet the necessary technical requirements in order to provide effective communication in situations where VRI is appropriate.

    3.    Train staff and doctors on appropriate interactions with d/Deaf individuals and how to determine what auxiliary aid or service is needed.

    4.    Give primary consideration to the auxiliary aid or service requested by d/Deaf individuals.

C.    Reasonable attorneys' fees and costs, including litigation expenses, as provided by law; and

COMPLAINT - 27; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644

1        D.        Such other relief as the Court finds just and proper.

2

3    DATED:  July 26, 2022                    Respectfully submitted,

4

5                                            By: s/ Meredith J. Weaver
                                             Meredith J. Weaver, WA Bar No. 58337

6
                                             DISABILITY RIGHTS ADVOCATES
7                                            2001 Center St., Fourth Floor, Berkeley, CA 94704
                                             Telephone: (510) 664-8644
8                                            Fax: (510) 665-8511
                                             Email: MWeaver@dralegal.org
9

10                                           By: s/ Moloy K. Good
                                             Moloy K. Good, WA Bar No. 36036
11                                           Good Law Clinic, PLLC
                                             7017 NE Highway 99, Suite 106, Vancouver, WA  98665
12                                           Telephone: (360) 694-4530
                                             Fax: (360) 694-4659
13                                           Email: moloy@goodlawclinic.com

14
                                             Attorneys for Plaintiffs and the Proposed Class
15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 28; Case No. 22-1033
*Spencer et al. v. Providence St. Joseph Health*

DISABILITY RIGHTS ADVOCATES
2001 Center St., Fourth Floor
Berkeley, CA 94704
510-665-8644