THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATHLEEN SPENCER; JASON VIGLIANCO; and MANDY RODRIGUEZ, Washington residents, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE ST. JOSEPH HEALTH, a Washington non-profit corporation; and WESTERN HEALTHCONNECT, a Washington non-profit corporation<br><br>Defendants. | Case No. 2:22-cv-01033-RAJ<br><br>ORDER GRANTING DISMISSAL OF THE ACTION |

Pursuant to Plaintiffs' request to voluntarily dismiss this action, and based on the Court's review of the Settlement Agreement, NOW THEREFORE, IT IS HEREBY ORDERED as follows:

1. All individual claims by Plaintiffs Kathleen Spencer, Mandy Rodriguez, and Jason Viglianco are hereby dismissed, with prejudice.
2. All putative class claims are hereby dismissed, without prejudice.
3. This Court retains jurisdiction over this case to enforce the terms of the Settlement Agreement, attached hereto as Exhibit 1, including resolution of any disputes that arise thereunder.
4. This Court's jurisdiction will continue for the Term of the Settlement Agreement. Should this Court become unavailable during the Term of the Settlement Agreement, the Parties shall request that another judge or magistrate judge be assigned authority over this matter.
5. The Clerk of the Court is directed to close this matter.

IT IS SO ORDERED.

DATED this 1st day of March, 2024.

*[signature]*

The Honorable Richard A. Jones
United States District Judge

Presented by *[signature]*
Meredith J. Weaver

# EXHIBIT 1

*Spencer et al v. Providence St. Joseph Health et al.*, Case No. 2:22-cv-01033-RAJ

<u>Settlement Agreement</u>

This Settlement Agreement (the "Agreement") is entered into as of the Effective Date by and between Plaintiffs Kathleen Spencer, Jason Viglianco, and Mandy Rodriguez (collectively, "Plaintiffs"); and Defendants Providence St. Joseph Health and Western HealthConnect (collectively, "Providence"). Plaintiffs and Providence are referred to collectively as the "Parties."

**I.     RECITALS**

Plaintiffs Kathleen Spencer, Jason Viglianco, and Mandy Rodriguez are individuals who are Deaf. Each Plaintiff is an individual with a disability within the meaning of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12102(1); and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(20)(B).

On February 8, 2022, Plaintiffs sent Providence a demand letter outlining their claims that Providence denied them full and equal access to healthcare services as a result of Providence's failure to provide effective communication in violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12182, *et seq.* (the "ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, *et seq.* ("Section 504"), and Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a) (the "ACA").

The Parties engaged in discussions following Plaintiffs' demand letter but were unable to resolve Plaintiffs' claims.

Plaintiffs then filed a lawsuit, captioned *Spencer et al v. Providence St. Joseph Health et al.*, Case No. 2:22-cv-01033-RAJ, in the U.S. District Court for the Western District of Washington on July 26, 2022 alleging an unlawful failure by Providence to provide effective communication and equal access to healthcare services at facilities in Providence's Puget Sound Region in violation of Title III of the ADA, Section 504, and the ACA ("the Action"). Plaintiffs filed their Complaint as a putative class action.

Shortly thereafter, Providence and Plaintiffs entered into settlement negotiations. During the negotiations, the Parties exchanged documents and engaged in extensive discussions regarding a potential resolution and settlement of the Action. As a result of such discussions, the Parties now wish to effect a complete resolution and settlement of the claims, disputes, and controversies relating to the Action, and to resolve their disputes by settling such claims, disputes, and controversies under the terms set forth in this Agreement. By entering into this agreement Plaintiffs do not concede any lack of merit in their allegations stated in their Complaint as to Providence's alleged non-compliance with the ADA, Section 504, the ACA, and their implementing regulations. Similarly, by entering into this agreement, Providence does not admit wrongdoing or concede liability, nor is Providence agreeing that Plaintiffs' allegations stated in their Complaint have merit.

Section titles and other headings contained in this Agreement are included only for ease of reference and shall have no substantive effect.

## II.     DEFINITIONS

***"Auxiliary Aids and Services"*** means a service or device that enables a person with a hearing disability to participate in and enjoy the benefits of Providence's programs and services. Including but not limited to: qualified sign language interpreters; computer-assisted real time transcription services (CART); written materials; telephone handset amplifiers; assistive listening devices and systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning; videophones; and videotext displays. *See* 45 C.F.R. § 84.52(d)(3).

***"Effective Date"*** means the date this Agreement is last signed by the Parties.

***"Employee"*** means (i) all employees, both full-time and part-time; and (ii) independent contractors over whom Providence has sufficient control and contractual authority to require training and who have contracts to work on a substantially full-time basis for Facilities (or on a part-time basis exclusively for a Facility), who have or are likely to have, direct contact with patients or companions or who are likely to play a role in provision of auxiliary aids or services. Employees include, but are not limited to, nurses, physicians, social workers, technicians, admitting personnel, billing staff, schedulers, and therapists, civil rights and/or accessibility coordinators, and linguistic services staff. This definition shall not be construed to create an employment relationship or joint employment relationship between Providence and contractors or others where none exists.

***"Facility"*** or ***"Facilities"*** means Swedish, PacMed, PRMC Everett, and PMG-Northwest, as further defined herein.

***"Non-employee Service Providers"*** means individuals who have or are likely to have direct contact with patients or companions or who are likely to play a role in the provision of auxiliary aids or services at any of the identified Facilities but who are not employed by Providence, including independent contractors over whom Providence does not have sufficient control or contractual authority to require training.

***"PacMed"*** means Pacific Medical Centers, including all clinics and departments.

***"Plaintiffs' Counsel"*** means Disability Rights Advocates and the Good Law Clinic.

***"PMG-Northwest"*** means Providence Medical Group – Northwest, including all clinics and departments.

***"PRMC Everett"*** means Providence Regional Medical Center Everett, including all departments.

***"Qualified Sign Language Interpreter"*** or ***"Qualified Interpreter"*** means a person who is able to interpret competently, accurately, and impartially, both receptively and expressively, using any specialized terminology necessary for effective communication in a medical setting to a patient or companion who is Deaf, hard of hearing, Deafblind, or deaf-disabled and relies on sign-language or oral interpretation for effective communication. Someone who has only a rudimentary familiarity with sign language or finger spelling is not a Qualified Sign Language Interpreter under this Agreement.

***"Swedish"*** means Swedish Edmonds Campus and Swedish Mill Creek Campus, including all clinics and departments.

***"Video Remote Interpreting"*** or ***"VRI"*** means a fee-based service that uses video conference technology to access an off-site interpreter to provide real-time sign language or oral interpreting services for conversations between hearing people and people who are Deaf or have hearing loss and rely on sign-language or oral interpretation services for effective communication.

### III.   ACTIONS TO BE TAKEN

#### A.   Communication Needs Identification and Documentation

Within 30 days of the Effective Date, Providence will ensure that all Facilities have (1) mechanisms in place to ask patients to report their and their companions' communication needs and preferred auxiliary aids and services to each Facility's scheduling and patient care teams; and (2) a method of documenting patients' and companions' reported communication needs and preferred auxiliary aids in a patient chart and/or electronic medical record. Providence will inform Plaintiffs' Counsel of the mechanism(s) and methods in place at each Facility.

#### B.   Policies, Procedures, and Training

##### 1.   Deaf Access Consultant

Within 30 days of the Effective Date, Providence will hire a mutually agreeable consultant with knowledge and experience in Deaf culture and healthcare access ("Deaf Access Consultant") to assist in development of policies and training pursuant to this Section III.B.

##### 2.   PacMed & PMG-Northwest

###### a)   *Policies & Procedures*

Within 60 days of the Effective Date, Providence will ensure that PacMed and PMG-Northwest have developed policies and procedures substantially similar to Exhibit A to this Agreement and submit those policies and procedures to Plaintiffs' Counsel. The policies and procedures developed in accordance with this Section will also include information about how to appropriately inform patients when a qualified interpreter will be provided via VRI in emergency situations if an in-person interpreter is requested but otherwise unavailable despite reasonable efforts to secure one.

Plaintiffs' Counsel shall have 14 days to evaluate the PacMed and PMG-Northwest policies and procedures and notify Providence that Plaintiffs' Counsel either (a) approve the proposed PacMed and PMG-Northwest policies and procedures in their entirety or (b) propose modifications to the Facility policies and procedures. If Plaintiffs' Counsel propose modifications to the PacMed and PMG-Northwest policies and procedures, Providence shall have 14 days to evaluate the proposed modifications and notify Plaintiffs' Counsel of any disagreement. In the event Providence disagrees with Plaintiffs' Counsel's proposed modifications, the parties shall proceed as set forth in Section V, below. Upon agreement

between Providence and Plaintiffs' Counsel on PacMed's and PMG-Northwest's policy and procedure, Providence shall have 60 days to confirm implementation.

                *b)*       *Training*

Providence will engage the Deaf Access Consultant to develop training module(s), using Exhibit B to this Agreement as a starting point, for PacMed and PMG-Northwest Employees. The training module(s) will cover:

- An overview of state and federal anti-disability-based-discrimination requirements as they apply to healthcare;

- Deaf culture and social norms;

- Interacting with people who are d/Deaf, hard of hearing, Deafblind, or deaf-disabled who rely on sign language or oral interpretation services for effective communication, including how to use an interpreter in-person, via VRI, or via Zoom;

- Positioning of VRI hardware to ensure a patient can see and be seen by the interpreter and is not required to manipulate a hand-held device while also signing;

- Assessing whether communication with a d/Deaf patient or companion is effective;

- Documenting a patient's understanding of the information contained in Exhibit C when a qualified interpreter is provided via VRI in emergency situations if an in-person interpreter is otherwise unavailable despite reasonable efforts to secure one;

- Informing patients or companions who express dissatisfaction with an auxiliary aid or service that they may submit such complaints through the grievance process and referring them to the process to do so; and

- Documentation requirements and protocols for the following information:

    i. When a Deaf patient requests an interpreter, whether the individual requested the interpreter be in-person, and what mode of communication was ultimately used for the interaction.

    ii. Instances in which an appointment is canceled or rescheduled due to the lack of an interpreter, and the cause of the interpreter unavailability.

    iii. When VRI technical issues occur, the date, description of the technical issues, alternative mode of communication used in lieu of VRI, and a description of the medical interaction (e.g. PCP appointment, surgery prep, mammogram examination, etc.).

The Deaf Access Consultant will send draft training modules to Providence and Plaintiffs' Counsel within 90 days of the Effective Date. Should the Deaf Access Consultant not be able to meet this timeline, the Parties may meet and confer to agree on an extended timeline without amending this Agreement. Providence and Plaintiffs' Counsel will have 14 days to review the draft training modules and provide any feedback to the Deaf Access Consultant for

consideration. Within 7 days of receipt of any revised version of the training modules from the Deaf Access Consultant, or within 7 days of a determination that no Party has any feedback for the Deaf Access Consultant, Providence will implement the training module.

Beginning 30 days after the training module(s) are implemented, all PacMed and PMG-Northwest Employees who are hired or return from a leave of absence will be required to complete the training within 30 days of hiring or return. Providence will provide copies of the training to any Non-employee Service Providers performing work for PacMed and PMG-Northwest, and instruct said service providers to provide the trainings to their staff and/or complete the trainings within 30 days of receipt.

All current PacMed and PMG-Northwest Employees will be required to complete the training within 60 days after the module(s) are implemented.

Thereafter, all PacMed and PMG-Northwest Employees will repeat the training and/or a modified version of the training on an annual basis. For the first subsequent annual training, Providence will provide Plaintiffs' Counsel with any such proposed modification prior to implementation and Plaintiffs' Counsel will have 14 days to provide input on the modified training, which will not be unreasonably rejected. For the purpose of these subsequent annual trainings, Providence may modify the training as necessary based on changes to applicable laws or regulations but will ensure the subsequent annual training will include the content from the training materials prepared by the Deaf Access Consultant unless subsequent laws or regulations abrogate any of that content. Providence will also provide copies of the annual training to any Non-employee Service Providers annually, and will instruct them to provide the trainings to their staff and/or complete the training on an annual basis.

       3.     <u>Providence Regional Medical Center Everett</u>

          a)     *Conference*

Within 6 months after the Effective Date, the Parties will hold a meeting to discuss communication experiences and any data collected since the most recent policies were implemented. The meeting shall be held either in person or by video conference and shall be attended by the Parties and their counsel, the ADA Coordinator for PRMC Everett, any individual(s) in charge of interpreter scheduling, the Deaf Access Consultant, and any other key stakeholders identified jointly by the Parties.

          b)     *Revision Process*

Within 14 days of the conference, Plaintiffs will provide Providence proposed modifications to the existing policies, procedures, and training, if any. The Parties will exchange proposed modifications until they reach agreement. Each Party will have 14 days from receipt to exchange proposed modifications. If the Parties cannot reach agreement on the policies, procedures, and training within six weeks, they shall proceed as set forth in Section V below.

        *c)     Implementation*

Upon agreement between the Parties on revised policies, procedures, and training to be implemented at PRMC Everett, Providence shall have 60 days to confirm implementation.

Beginning 30 days after the revised training module(s) are implemented, all PRMC Everett Employees who are hired or return from a leave of absence will be required to complete the training within 30 days of hiring or return. Providence will provide copies of the training to any Non-employee Service Providers performing work for PRMC Everett, and instruct said service providers to provide the trainings to their staff and/or complete the trainings within 30 days of receipt.

All current PRMC Everett Employees will be required to complete the training within 60 days after the module(s) are implemented.

Thereafter, all PRMC Everett Employees will repeat the training and/or a modified version of the training on an annual basis. For the first subsequent annual training, Providence will provide Plaintiffs' Counsel with any such proposed modification prior to implementation and Plaintiffs' Counsel will have 14 days to provide input on the modified training, which will not be unreasonably rejected. For the purpose of these subsequent annual trainings, Providence may modify the training as necessary based on changes to applicable laws or regulations but will ensure the subsequent annual training will include the content from the training materials prepared by the Deaf Access Consultant unless subsequent laws or regulations abrogate any of that content. Providence will also provide copies of the annual training to any Non-employee Service Providers annually, and will instruct them to provide the trainings to their staff and/or complete the training on an annual basis.

    4.    <u>Swedish</u>

        *a)     Conference*

Within 9 months after the Effective Date, the Parties will hold a meeting to discuss communication experiences and any data collected since the most recent policies were implemented. The meeting shall be held either in person or by video conference and shall be attended by the Parties and their counsel, Swedish's ADA Coordinator(s), any individual(s) in charge of interpreter scheduling, the Deaf Access Consultant, and any other key stakeholders identified jointly by the Parties.

        *b)     Revision Process*[1]

Within 14 days of the conference, Plaintiffs will provide Providence proposed modifications to the existing policies, procedures, and training, if any. The Parties will exchange proposed modifications until they reach agreement. Each Party will have 14 days from receipt to exchange proposed modifications. If the Parties cannot reach agreement on the policies, procedures, and training within six weeks, they shall proceed as set forth in Section V below.

---

[1] Any changes to Swedish policies or trainings will not conflict with the Swedish First Hill consent decree entered into with the U.S. Department of Justice.

*c)* *Implementation*

Upon agreement between the Parties on revised policies, procedures, and training to be implemented at Swedish, Providence shall have 60 days to confirm implementation.

Beginning 30 days after the revised training module(s) are implemented, all Swedish Employees who are hired or return from a leave of absence will be required to complete the training within 30 days of hiring or return. Providence will provide copies of the training to any Non-employee Service Providers performing work for Swedish, and instruct said service providers to provide the trainings to their staff and/or complete the trainings within 30 days of receipt.

All current Swedish Employees will be required to complete the training within 60 days after the module(s) are implemented.

Thereafter, all Swedish Employees will repeat the training and/or a modified version of the training on an annual basis. For the first subsequent annual training, Providence will provide Plaintiffs' Counsel with any such proposed modification prior to implementation and Plaintiffs' Counsel will have 14 days to provide input on the modified training, which will not be unreasonably rejected. For the purpose of these subsequent annual trainings, Providence may modify the training as necessary based on changes to applicable laws or regulations but will ensure the subsequent annual training will include the content from the training materials prepared by the Deaf Access Consultant unless subsequent laws or regulations abrogate any of that content. Providence will also provide copies of the annual training to any Non-employee Service Providers annually, and will instruct them to provide the trainings to their staff and/or complete the training on an annual basis.

**C.** **Provision of Auxiliary Aids and Services**

Providence acknowledges its obligation to provide effective communication to patients and companions at all Facilities, including through the provision of auxiliary aids and services free of charge.

In order to ensure such effective communication, each Facility will maintain a list of auxiliary aids and services available onsite at each Facility, along with directions for obtaining the aid or service.

1. **Facility Reporting Obligations**

With the exception of Swedish Mill Creek campus, each Facility will document and report the following information on a quarterly basis, consistent with Section IV for the Term of the Agreement:

a. For each instance in which a Deaf patient requests VRI or an in-person interpreter:

   i. Whether the individual requested VRI or an in-person interpreter, and

   ii. The type and method of auxiliary aid(s) and/or service(s) ultimately provided.

b. Instances of Qualified Sign Language Interpreters provided (i) in-person, (ii) via VRI, and (iii) via telehealth.

7

    c. Instances in which it is reported that an appointment was canceled or rescheduled due to the lack of an interpreter, and the cause of the interpreter unavailability.

    d. Formal patient complaints related to provision of auxiliary aids and services to Deaf patients or companions received through each Facility's complaint and grievance process, responses thereto, and ultimate resolution.

    e. Reported VRI technical issues: date, description of the technical issues, alternative mode of communication used in lieu of VRI, and a description of the medical interaction (e.g. PCP appointment, surgery prep, mammogram examination, etc.).

Swedish Mill Creek campus will document and report any formal patient complaints related to provision of auxiliary aids and services to Deaf patients or companions received through its complaint and grievance process, responses thereto, and ultimate resolution.

In addition, within 30 days of the Effective Date, each Facility will designate one centralized individual or group of individuals to be responsible for the reporting obligations outlined above.

    2. <u>Sign Language Interpretation</u>

Providence acknowledges its obligation to provide effective communication to Deaf patients or companions, including through the use of qualified sign language interpreters. Providence and each Facility will take all reasonable steps in their control to provide a qualified sign language interpreter whenever requested by a Deaf patient or companion who relies on sign language for effective communication.

    a) *In-Person Interpretation*

Each Facility will maintain contracts with at least three agencies capable of providing in-person sign language interpretation, at least one of which must be capable of providing in-person sign language interpretation with less than 24-hours' notice.

Each Facility will maintain an up-to-date reference in a readily accessible location for Employees that indicates (a) who is responsible for scheduling in-person interpreters; (b) how to contact the individual(s) responsible for scheduling in-person interpreters; and (c) scenarios in which an in-person interpreter should be provided pursuant to this section, below.

Providence and each Facility will defer to a request that a Qualified Interpreter be provided in-person and will take all reasonable steps within its control to secure an in-person interpreter upon request. Notwithstanding a request for an in-person Qualified Interpreter, in emergency situations Providence may provide a Qualified Interpreter via VRI (1) as an interim measure while awaiting the arrival of an in-person interpreter or (2) if an in-person interpreter is otherwise unavailable despite reasonable efforts to secure one and the patient or companion consents to using VRI given the circumstances. Under most circumstances, unless impracticable due to the nature of the emergency, Providence will provide the information contained in Exhibit C in writing to inform patients that VRI will be used despite a request for an in-person interpreter, and will document the patient's understanding of this information.

If, prior to a scheduled appointment, it becomes apparent that a requested in-person interpreter will not be available for the appointment, the Facility will contact the patient as soon as possible to inform them that no in-person interpreter is available and allow the patient to decide whether to go forward with the appointment using VRI or another auxiliary aid or service or reschedule with no cost to the patient.

Providence recognizes that an in-person Qualified Sign Language Interpreter may be the most effective or only effective method of communication in certain circumstances for patients who rely upon such types of communications. Such circumstances arise when the communication is particularly complex or lengthy, when the patient's or companion's circumstances render other methods of communication ineffective, and when VRI is not functioning properly. For example, such circumstances may include, but are not limited to:

- Where the patient or companion exhibits additional disabilities that impact communication, including:
    - cognitive, psychiatric, or mental health issues;
    - limited ability to move hands or arms;
    - vision impairments, such as low vision.
- Where the patient exhibits additional clinical issues that impact communication, including:
    - under the influence of drugs, alcohol, or medication that impacts their stamina or cognition;
    - experiencing significant fatigue;
    - consciousness issues;
    - severe pain issues.
- Where the communication involves complex content or interaction, including:
    - Sensitive topics such as end-of-life decisions or terminal illness;
    - Significant exchange of information for diagnosis;
    - Explanation of medical conditions, treatment options, tests, medications, surgery and/or other procedures;
    - Obtaining informed consent for treatment;
    - Discharge, after-care, and other follow-up instructions;
    - Providing mental health services, including group or individual counseling for patients and family members;
    - During child birth.
- Where the patient is a deaf child.
- Where communicating through VRI is not working, and no other auxiliary aids or services are available to facilitate effective communication.

    b)  *Video Remote Interpreting*

Within two weeks of the Effective Date, each department that utilizes VRI will maintain an up-to-date reference in a readily accessible location that indicates (a) where VRI equipment is located, (b) who is responsible for maintaining and setting up VRI equipment with contact information for those individuals, and (c) how to use the VRI equipment.

            (1)    Evaluation of VRI.

***Evaluation by Expert.*** Providence will engage a mutually agreeable VRI consultant with sufficient expertise (including in video and wireless broad-band and high-speed connections) to (i) evaluate the existing connections and hardware for VRI at each Facility; (ii) analyze whether the existing connections and hardware meet or can meet the specifications set out at 28 C.F.R. § 36.303(f); (iii) prepare a report with findings and recommendations for improving the connection(s) and hardware at these locations; and (iv) send the report to Providence and Plaintiffs' counsel.  The expert will also provide recommendations about how to evaluate and improve video and/or wireless connection(s) and hardware for VRI generally, so that other Providence facilities not covered by the Agreement may do so as needed.

Hardware Evaluation: For the purpose of the hardware evaluation, Providence will provide the VRI consultant with the technical specifications—including make, model, operating system, software version of any relevant software, and software update protocols—of each type of device used for VRI at each Facility.  If the VRI consultant determines they need additional information about the devices in order to analyze whether the hardware meets or can meet the specifications set out at 28 C.F.R. § 36.303(f), Providence will provide the requested information. The VRI consultant will then evaluate the provided specifications and will analyze whether the hardware meets or can meet the specifications set out at 28 C.F.R. § 36.303(f). After this initial evaluation, the VRI consultant will propose a plan for further hardware evaluation or modification, if needed. Should the VRI consultant determine that additional hardware evaluation or modification to Providence's VRI hardware is warranted, Providence will facilitate such evaluation or modification if reasonable. If the parties cannot come to an agreement as to a reasonable implementation of the VRI consultant's recommended additional evaluation or modification, the parties will utilize the dispute resolution process as detailed in Section V.

The report should be completed within one year of the Effective Date. Should the mutually agreeable expert not be able to meet this timeline, the Parties may meet and confer to agree on an extended timeline without amending this Agreement.

Upon receipt of the expert's report, the Parties will meet and confer to determine a timeline for implementation of the recommendations. Upon agreement, the Parties will memorialize the timeline in writing as a supplement to this Agreement. In the event the expert determines that the existing video and/or wireless connection or hardware at a location is not sufficient to reliably meet the specifications set out at 28 C.F.R. § 36.303(f), Providence will limit its reliance on VRI as a mode for providing Qualified Sign Language Interpretation exclusively to emergency situations until the recommendations are implemented and compliance with the specifications is confirmed by the expert.

            c)    Telehealth

Providence will provide Qualified Sign Language Interpreters for outpatient telehealth appointments.

## IV.    MONITORING IMPLEMENTATION

Providence will provide Plaintiffs the following reports:

1. Confirmation of completion of the training and policy commitments outlined in this Agreement; and

2. Information gathered from PRMC Everett pursuant to Section III.C.1. Such report shall be provided five (5) months after the Effective Date. Patient and Companion personal identifying information shall be redacted from this report.

3. All information gathered from Facilities pursuant to Section III.C.1. Patient and Companion personal identifying information shall be redacted. Such reports shall be provided at 8 months, 12 months, 18 months, and 24 months after the Effective Date. Thereafter, through the Term of the Agreement as defined by Section VII.A, such reports shall be provided annually on the anniversary of the Effective Date.

Following receipt of Providence's report, Plaintiffs may request a conference to discuss any aspects thereof. Should Plaintiffs request such a conference, they will inform Providence of the subject matter they wish to discuss in advance. The conference will be held within 14 days of Plaintiffs' request unless the Parties mutually agree to a later date.

Should any report indicate an increase from the prior report in VRI technical issues, patient complaints, failure to provide the requested type and/or method of auxiliary aid or service, or appointment cancellation related to interpreter availability at the same Facility, the Parties will meet and confer to determine appropriate steps to address the issue and if the Parties cannot agree on appropriate steps within 6 weeks, the Parties may pursue Section V's dispute resolution procedures from the Mediation stage.

## V.    DISPUTE RESOLUTION AND ENFORCEMENT

The Parties agree that Judge Jones of the U.S. District Court for the Western District of Washington shall maintain jurisdiction of this case for purpose of enforcing this Settlement Agreement, including the resolution of any disputes that arise hereunder, for the Term of this Agreement. Should Judge Jones become unavailable, the Parties agree to accept the jurisdiction of any other Judge assigned by the U.S. District Court for the Western District of Washington for continuing jurisdiction purposes, subject to the Parties' normal rights to object to a judicial assignment under the Federal Rules of Civil Procedure.

### A.    Meet and Confer

If a dispute arises concerning implementation of the Agreement, including appropriate modifications to policy or training materials pursuant to Section III.B, the Party seeking relief shall first contact counsel for the opposing Party in writing to request a meeting. The meeting shall take place within 14 days of notification, or at a further date mutually agreed to by the Parties. At the meeting, the Parties will discuss thoroughly, preferably in person or by video conference, the substance of the dispute and any potential resolution.

### B.    Mediation

In the event the Parties are unable to resolve their dispute within 30 days of the meeting, the dispute may be submitted to mediation with Nancy Maisano. If Ms. Maisano is not available to

mediate the dispute within 45 days, the parties will select another mutually agreeable neutral third-party mediator unless they mutually agree otherwise to wait for Ms. Maisano to become available. The Parties will pay their own expenses with respect to the dispute process and equally share the cost of the mediator.

### C.    Resolution by District Court

If the Parties' mediation efforts are unsuccessful, the Parties agree to submit any remaining disputes for binding resolution by the District Court for the Western District of Washington under the Court's continuing jurisdiction over this case. Notwithstanding Section VI, the prevailing party may recover fees consistent with the 42 U.S.C. section 12205.

## VI.   ATTORNEYS' FEES AND COSTS

### A.    Attorneys' Fees and Costs Through the Effective Date

Within 30 days of the Effective Date, Providence will pay Plaintiffs' attorneys' fees and costs in the amount of $135,000 to resolve Plaintiffs' claim for fees and costs through the Effective Date of the Agreement.

### B.    Attorneys' Fees During the Term of the Agreement

During the first 24 months of the Agreement Term, Providence will pay Plaintiffs' attorneys' fees on a monthly basis. Plaintiffs' counsel will use a fixed rate of $580 for counsel and will bill litigation support staff at their standard rates. There will be a cap of $60,000 in fees (including all billers) during the first 24 months of the Term. However, should the Parties pursue dispute resolutions under Section V, fees incurred for any such dispute shall be excluded from the $60,000 cap.

The Parties will meet and confer no later than 23 months after the Effective Date regarding reasonable attorneys' fees (including rates) to be paid for additional work necessary to monitor implementation of the Agreement after the 24th month. If the Parties cannot reach agreement on reasonable attorneys' fees within 30 days, they will proceed to mediation pursuant to the dispute resolution procedures in Section V, beginning at the mediation stage.

## VII.  MISCELLANEOUS TERMS

### A.    Term of the Agreement

The District Court's jurisdiction to enforce this Agreement shall continue through the final date on which all required obligations outlined in the Agreement are completed, including completion of the actions recommended based on the expert's VRI evaluation. Providence's obligation to provide reports pursuant to Section IV shall not be considered an obligation that will extend the term of the Agreement once all other obligations of the Agreement are satisfied.

**B.      Release of Claims**

In consideration for the promises, commitments, and undertakings set forth in the Agreement, Plaintiffs, on behalf of themselves and their respective heirs, executors, predecessors, successors, assigns, transferees and agents (collectively, "Releasing Parties"), will, upon the Effective Date, fully and finally release, acquit, and discharge Providence St. Joseph Health, Western HealthConnect, and each Facility from and against all causes of action, claims, lawsuits, debts, damages, judgments, liabilities, and demands, whether known or unknown, asserted or unasserted, or actual or contingent, arising out of or relating to the provision of effective communication when accessing healthcare services at the Facilities defined in this Agreement at any time prior to the Effective Date.

The Releasing Parties do not release any claims to enforce the terms of this Agreement. With respect to any claim to enforce the terms of this Agreement, the Parties agree that the exclusive manner of enforcement shall be the dispute resolution procedures set forth in Section V, above.

**C.      Dismissal**

Upon the Effective Date of this Agreement, Plaintiffs will promptly seek dismissal of the Action with prejudice as to Plaintiffs' individual claims and without prejudice as to putative class claims, pursuant to Federal Rule of Civil Procedure 41(a).

**D.      Entire Agreement**

This Agreement, and the documents attached to or expressly referred to in this Agreement, constitute the final and complete written expression and exclusive statement of all the agreements, conditions, promises, representations, and covenants between the Parties with respect to the matters referenced in this Agreement, and supersede all prior or contemporaneous negotiations, promises, covenants, agreements, or representations of any nature whatsoever with respect to such matters, all of which are superseded by this Agreement.

Each of the Parties understands and agrees that in the event of any subsequent litigation, controversy, or dispute concerning any of the terms, conditions, or provisions of this Agreement, no Party shall be permitted to offer or introduce any oral evidence concerning any oral promises or oral agreements between the Parties relating to the subject matters of this Agreement not included or referred to in this Agreement and not reflected in a writing.

This Agreement cannot be amended, modified, or supplemented except by a written document signed by all of the Parties.

**E.      Authorization and Execution in Counterparts**

The Parties have read and understood this Agreement, have had the opportunity to discuss same with legal counsel, and have voluntarily agreed to sign the Agreement and agree to be bound thereby. Each person executing this Agreement on each party's behalf has been duly authorized to sign on behalf of the respective party and to bind each to the terms of the Agreement.

The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument.

The Parties agree that this Agreement may be executed by electronic means. The Parties agree and acknowledge that a photocopy, facsimile copy, or scanned copy of an executed signature may be used in place of an original executed signature for any purpose.

Date: _____ _____
Kathleen Spencer

Date: _____ _____
Jason Viglianco

Date: _____ _____
Mandy Rodriguez

Date: _____ PROVIDENCE ST. JOSEPH HEALTH

By: _____

Print Name:_____

Position: _____

Date: _____ WESTERN HEALTHCONNECT

By: _____

Print Name:_____

Position: _____

APPROVED AS TO FORM:

Date: _____ DISABILITY RIGHTS ADVOCATES

By: _____
Meredith J. Weaver, Senior Staff Attorney

Date: _____ DAVIS WRIGHT TREMAINE, LLP

By: _____
Jenna Mooney, Partner

The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument.

The Parties agree that this Agreement may be executed by electronic means. The Parties agree and acknowledge that a photocopy, facsimile copy, or scanned copy of an executed signature may be used in place of an original executed signature for any purpose.

Date: _____

Kathleen Spencer

Date: _____

Jason Viglianco

Date: _____

Mandy Rodriguez

Date: 2/15/2024

PH&S-WA DBA PRMCE AND PMG NW

By: *Kevin Brooks*

Print Name: Kevin Brooks

Position: Divisional Chief Executive – North

Date: 2/15/2024

SWEDISH HEALTH SERVICES

By: *Elizabeth Wako*

Print Name: Elizabeth Wako

Position: President and CEO – Swedish Health Services

APPROVED AS TO FORM:

Date: _____

DISABILITY RIGHTS ADVOCATES

By: _____
Meredith J. Weaver, Senior Staff Attorney

Date: 2/20/2024

DAVIS WRIGHT TREMAINE, LLP

By: *signature*
Jenna Mooney, Partner

14

The Parties agree that this Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument.

The Parties agree that this Agreement may be executed by electronic means. The Parties agree and acknowledge that a photocopy, facsimile copy, or scanned copy of an executed signature may be used in place of an original executed signature for any purpose.

Date: February 12, 2024

*Kathleen Spencer*
Kathleen Spencer

Date: February 9, 2024

*Jason Viglianco*
Jason Viglianco

Date: February 9, 2024

*Mandy Rodriguez*
Mandy Rodriguez

Date: _____

PROVIDENCE ST. JOSEPH HEALTH

By: _____

Print Name: _____

Position: _____

Date: _____

WESTERN HEALTHCONNECT

By: _____

Print Name: _____

Position: _____

APPROVED AS TO FORM:

Date: February 12, 2024

DISABILITY RIGHTS ADVOCATES

By: *Meredith J. Weaver*
Meredith J. Weaver, Senior Staff Attorney

Date: _____

DAVIS WRIGHT TREMAINE, LLP

By: _____
Jenna Mooney, Partner

14